I represent Sharrod Rowe who was convicted of conspiracy to distribute cocaine in part based on two incriminating statements he made in the back of a locked patrol car. Somebody told on us, somebody told on us. Those statements should not have been admitted at trial because they were the product of a de facto arrest without any probable cause for that arrest. There's no other constitutional basis for admitting those statements and because of that. But if who was told to make a probable cause stop and is it a woman elected on her own to wait to make the stop until she thought there was a traffic violation. Now we have kind of a two-pronged beast here. That's right your honor. So let's go but the but the probable cause to stop chain if if there if there if the collective if there was collective probable cause. That's exactly right. Your your your analysis based on what can can and can't be done after a valid traffic stop doesn't doesn't answer this case. Your brief your brief just assumes in making the extended detention argument among others that this is nothing but a traffic stop. It seems to me that that's not that's not true unless unless they didn't know enough from what was as the government says was a reliable confidential informant that a at that time. Yes your honor let me clarify that point because if that was the point the court took away from my brief it was unintentional. The issue that the court I the court identified two potential issues there. One being whether there was probable cause to stop based on a traffic violation. I don't think there's any dispute that if there was probable cause to stop based on a traffic violation excessive window tint that that as a petty misdemeanor in Minnesota is not an arrestable offense. So the real question is whether based on the collective knowledge theory of all of the officers involved including Trooper Thole who made the stop there was probable cause to believe that Mr. Rowe was in possession of a large quantity of cocaine. Now the issue the I was not trial counsel in this matter but as I've read the record I did not find evidence that the suppression hearing or the trial which of course is admissible to determine whether or not the motion to suppress was appropriately denied. I didn't see any evidence in there of Trooper Thole indicating that she had any more information about this matter than just that a dispatch report had suggested she should stop this vehicle because it may be involved in possible narcotics. That's that's tipping the cases I've seen that are dealing with interstate or non-local drug courier situations where the DEA and other investigators want to get a uniformed officer in a squad car, highway patrol car to make the stop. That's right you're right. They say make a stop. That's exactly right and in those cases there needs not be any communication as to why to stop and so far as the stop goes that would be sufficient. That doesn't automatically get and because that would rise to the level of a essentially a Terry stop, stopping the vehicle at the side of the road. It does not automatically give probable cause to arrest a person driving a vehicle if there's a dispatch that says this vehicle may be involved in traffic or in narcotics trafficking. The case is okay but now let me let me my understanding of the facts taking it what it seems to me to be the next step is that after Officer Thole, the other officer arrives and she says I've done some questioning you question some more while I go do the traffic stop paperwork so that we don't delay this and he did some more questioning and then they went back and somehow conferred with the investigators who said impound the car. That's I think correct your honor this is we've got a record in this case and we also have two videos. That's where we have the coming together of the of the two as I'm reading the facts knowing them less well less much less well than the lawyers who were involved. Your honor I believe that what happened is that it was Trooper Thole and Officer Wagner who did the questioning then pulled Mr. Rowe out of the vehicle because they had made the determination that they would bring in a drug dog and potentially tow the vehicle. After that determination was made and this happens at about it happens very quickly at about time stamp 10 10 and 10 11 on exhibit 9 in the motion hearing transcript it was Officer Wagner's dash cam video. I believe it was after that time actually that special case agent Danielle Evans showed up and informed the officers then well we're going to detain the car and we're going to detain Mr. Rowe as well. So it seems to me if the initial probable cause existed when the investigators told this dispatch to get get a get a probable cause authorized not only the stop but the impoundment of the car for to search it and probably to arrest without more anyone who's driving and therefore in possession of what there's probable cause to believe is there. Don't disagree with that your honor. I don't believe Why doesn't that end the case? Because I don't believe the record would reflect that at the time Mr. Rowe was brought back to the car at which time he'd already been handcuffed and brought back to the squad car by four uniformed officers and put in the back of the car that the officers who did that had that collective knowledge. The question is really when the officers glean the collective knowledge just says there has to be communication to have collective knowledge. Communication is sufficient to to give the officers probable cause. I think it's no I don't well of course that's that's the fighting issue because does the officer in this situation which I don't think is that uncommon where the drug investigators want want a uniform to do the to do the stop the arrest the impounding they don't have to tell the officer everything that's being done they have to say you know do it. That's right but in the cases that we usually see this in Winarski, Malta, cases like that what happens. Wilson I had was a lot like it. The guy that started in Mason City and ended in Des Moines. I don't I'm sorry your honor I don't forget I don't know that case but in cases that that this typically happens in there's a stop by a uniform officer and then that there's a detention until the investigating officers arrive. Sometimes if that if it takes a long time for those investigating officers to arrive the investigating officers will inform the arresting officer of the facts that they know them. For instance in Malta that this has been somebody who had gone over the border that there were secret compartments in a in a trailer. Here we don't have any evidence of that. I would suspect that typically happens but is it constitutionally necessary that it happened? Under the collective knowledge theory I believe that it is. What's what's your best case from any circuit then that to support the the collective knowledge doctrine requires that much communication? The name escapes me your honor and it's in our brief in the footnote of our reply brief footnote two and I'll find it for you on when I come back up. Why does it make sense as a matter of first I mean if the drug investigators have solid probable cause and they call a uniformed officer and say we've got solid probable cause that this car is loaded with drugs and the driver knows about it and the uniformed officer based on that arrests the person why does it make sense to say that there's no probable cause because the drug officers didn't go through chapter and verse as to why they had probable cause if they in fact did have probable cause. Well here we didn't even have that much. I know I know but your legal proposition you're arguing is that unless the drug investigators communicate chapter and verse the collective knowledge doctrine doesn't apply so I'm asking why that makes sense if if in fact there is probable cause why is it enough just for the drug investigators to say we've got probable cause please execute the arrest for us. I mean I suppose it's the whole basis of the constitute or the collective knowledge theory in the first place that if the fourth amendment rights of the accused and defendants are to be respected. But how does that disrespect the rights of the accused that's what I'm trying to follow why why is that an unreasonable search if there is in fact probable cause and the drug investigators communicate that to the arresting officer and the arresting officer acts on it why do you think that's unreasonable? And I again to I don't I'm not I'm not suggesting that the court's cases would require chapter and verse okay so I think however it should all right it requires something more than merely a dispatch and a request that an officer pulls somebody over. But I think an instruction to impound you know the investigator doesn't have to doesn't have to come to the scene to do that. That's right. And this prop this probable cause is as described and I don't think it doesn't seem to be challenged I mean there is a car coming specifically described by a reliable informant that will have drugs today so the investigators tell the uniform take it down to the impoundment lot right that's not unreasonable that's that's they frequently have to do that because if things are well enough concealed they won't be discovered in a roadside search anyway. That's right and here they weren't there there were no drugs found at the scene. You know the investigators they'll do the impound people to do the search the uniform uniform officers are they're done when the car gets to the impound lot probably. That's right and this is where I think the timing is critical and unlike the case the court heard earlier this morning we have good audio and video evidence of this and my recollection of that review is that the order to impound what came after Mr. Rowe was already placed in Officer Wagner's squad car and had already made those incriminating statements. I see I'm just coming into my rebuttal time here in absent questions from the court I will reserve the remainder of my time and I'll get that case site for you. I'll give you a little thank you your honor may it please the court counsel I'm assistant United States attorney Leanne Bell and I represent the United States on this appeal I also served as trial counsel and was present at all of the testimony that took place in this case and so because of that I am fully aware of the facts and what the facts were both on the video and at the trial or excuse me the motions hearing and I would let the court know that a review of the video would show that in fact prior to Mr. Rowe being removed from the vehicle Trooper Thule was informed via Officer Wagner who had spoken with investigators on the scene that in fact they had probable cause to tow the vehicle and search it and that Mr. Rowe should be removed from the vehicle that's contained within the video government's exhibits eight and nine there are two videos Trooper Thule's and Officer Wagner's and it is also contained on page 99 of the hearing transcript from the suppression hearing of Mr. Rowe where Trooper Thule was asked did you believe you had sufficient information to impound the vehicle and she said impound the vehicle based on their information they advised me they had probable cause so in terms of the timing of the information provided to Trooper Thule there was the bulletin at the start of her shift to be on the lookout for this particular vehicle and then while she was on the scene and still completing her paperwork related to the tinted windows Officer Wagner communicated with officers on scene who were the investigators of the drug case and were informed specifically that there was in fact probable cause and only after that point was Mr. Rowe removed from the vehicle and placed in the back of the squad car and so I think the court is following government's brief in realizing that if there's probable cause which there was there's really no question about it the defense isn't moving or objecting to or appealing the district court's ruling if there was probable cause to stop the vehicle itself as opposed to Mr. Rowe detaining Mr. Rowe in particular because of that and because of Pringle there is probable cause to detain this defendant given the facts and the information that was communicated to this officer additionally if the court were to reach the issue of the prolonging of the stop I would just point out to the court that the stop wasn't unreasonably prolonged I think the defendant indicates in his brief that the that a traffic stop for tinted windows of 25 minutes is just per se unreasonable but of course that's not really the question the court's looking at the totality of the circumstances for this particular stop and what was taking place in this particular stop and the magistrate judge and then the district court made very particular factual findings about what was taking place during the stop and found that Trooper Thule was in fact still doing her paperwork at the time that Mr. Rowe was removed from the BMW and placed in the squad car and so because she was still working on the window tint portion of the stop I think the court's right to point out there's sort of two avenues taking place here simultaneously because she was working on that portion that she was focused on and was doing that expeditiously no question from the factual findings from the court and from the video there's really no I think from the party's briefs there's no dispute about what happened because it was captured on video including Trooper Thule's we don't want to delay I don't want to delay this any longer than necessary I'm still completing my paperwork I'm working to complete my paperwork and because that was captured on video there's really no question that the district court abused its discretion in making factual findings about what was happening on the scene this is paperwork on the tinted window issue correct she was preparing a a warning violation and so she referred to it as her paperwork and so because she was completing that and moving along by her own words in a way so as not to detain him any longer than necessary were the court to reach the issue of the duration of the stop the factual findings by the court which are clearly not abuse of discretion in light of the video more or less necessitate or result in under the law the conclusion that the stop was not minimal role procedure sentencing issue which is of course submitted on the briefs even if not argued in it occurred to me I didn't see any discussion in the briefs about what drug quantity was attributed to to Mr. Rowe which usually may well which often goes hand in hand with whether whether they a role adjustment should be made with was he was he limited in in relevant conduct quantity to to something less than the full conspiracy how the PSR divided up the the PSRs divided up the drug quantity is that the two individuals Green and Williams who mailed the well four kilos total because they mailed them together so they were held responsible for the four kilograms that they mailed and Mr. Rowe was responsible for the six kilograms of cocaine in the vehicle Houston Oliver who's going to be sentenced on a separate case who was the leader of this according to the PSR currently we'll see what Judge Doty finds ultimately is being held responsible for all ten kilograms so he was held responsible for six kilograms of cocaine which is the cocaine in the BMW you mean on the view that the other four were not reasonably foreseeable to him for some reason that was your government's position no that wasn't the government's position we have a a practice I guess you could say our probation office review reads drug quantity very very narrowly and so tends to assign drug quantity that is not just reasonably foreseeable but actually assignable to it if the probation office isn't following the law then the government can object correct in this case it wouldn't have made any difference to the guidelines because the amount four kilos would the addition of the additional six kilograms would not have changed the guideline enhancement so while we talked about the total conspiracy there was also money that was taken to Arizona and a number of other things that happened that the government argued affected what his role was in his sentence from a guidelines perspective it made no difference to object or not object to it last I just like to point out with respect to the issue about the magistrate judge's reliance or I would say alleged reliance on the earlier hearing I have spent a lot of time going through the transcript and pointing the court to the facts and the citation so that the court can rest assured that in fact the magistrate judge didn't rely on hearsay although it was permissible the government offer that I mean it seems like the government's kind of running away from it now frankly and saying well it wasn't relied on at all so that raised the question in my mind what was the point of offering it in the first place so as an initial matter Mr. Rowe was added in the superseding indictment after two co-defendants had already had their motions hearing and originally myself and counsel for Mr. Rowe thought we had worked out a plan for how we would proceed because the same magistrate judge heard the same testimony they had the transcripts and so we had sort of tried to work out an abbreviated way of getting through this just for efficiencies sake ultimately we could not reach an agreement about what the ground rules for that would be at the motions hearing and so it went back and forth and back and forth for a fairly extended period of time until the judge said look let's just have the testimony I'll look at everything and we'll just move forward at this point at the conclusion of the first witness's testimony sergeant Biederman at the first hearing she asked defense counsel the magistrate judge said have you asked this witness everything you want to ask them anything that you would want to cross-examine them about related to prior testimony the prior transcripts anything because I might have had prior testimony at in making my decision here and defense counsel said I've asked everything I wanted to at the conclusion of the second witness she asked the same thing and at that point the defense objected to the procedure so it was kind of a what was the prior hearing it was it admitted as in the in the record it suppression here was it suppression hearing evidence the prior transcript the transcript was not admitted it was it we all referred to it on the record it was on the docket so we didn't actually make it a separate exhibit we just simply referred to the prior hearing the magistrate then made a ruling based on evidence not in the record no your honor the magistrate judge did not make a ruling any rulings based on the information from the earlier hearing but referred to she did refer to it but she didn't need to so as she noted in her as she noted in her footnote not argued as error it strikes me as error to refer to information from the prior hearing you're saying it was not in the record well is it in the record or not I mean you're saying it's a public transcript on the docket sheet of this same of a different defendants case or is this a consolidated case or what it was okay it was all the same case so same case number he was superseded after so if you go to the docket sheet for all the defendants this transcript would be earlier on the docket correct but this defendant wasn't present at the hearing and his lawyer wasn't present he was not which is why the magistrate judge I think noted the earlier hearing but then made the specific footnote in her R&R that the testimony at both hearings was nearly identical and I was at both and as I was the question I can tell you it was literally almost identical and then she said even if there was a different critical witness on the probable cause your honor there was not a critical witness they were they were they were working together but but the the woman who testified at the Oliver hearing didn't testify at this hearing and there's never been an objection or concern about the other case agent testify this is this strikes me as evidentiary very suspect well your honor it doesn't if that had happened public record if we were relying on testimony is establishing facts if the court had relied on the testimony I think we could get further into that discussion but the court didn't simply did not says you know you can question all these what you can question the witnesses and I'll then that then that'll let me look at the old testimony and then one of the witnesses doesn't appear but so at the start of the hearing everyone knew who the witnesses were going to be there was never a request to have to a continuation of the hearing to call the other witness because they were co-case agents and had the same information to provide at the hearing and did in fact testify about the you look at the these citations there are 30 citations actually more than 30 citations to various transcripts and exhibits within the R&R on for four times she cited dual citations to both the earlier and the later hearing and in every one of those circumstances the testimony was identical so let me give you an example I call say this to the district court when there was an objection because it looks like the government was still pushing the prior hearing at the district court level because the district court ruled that it was okay to use it the government's position was that the prior hearing was not necessary we had elicited the exact same testimony at the second hearing all the same facts that the court needed to make its decision and that well hearsay is permissible at a hearing the court doesn't need to in order to resolve the issue of the R&R of the suppression itself doesn't need to address that but the court did anyway did Rose lawyer have advanced notice that the magistrate judge would or might rely on the prior transcripts so that he could read them all yes your honor I specifically had conversation with him and we the hearing with a plan if you read the transcript we start out saying I think we've reached a plan to try to do this most efficiently and then we could not agree on the ground rules for a variety of reasons and so ultimately we put the testimony on and ultimately the court although made the citations I can tell you that the transcripts are literally identical and I'll give you one citation of the four in the entire R&R that the defendant actually talks about the facts in his reply brief he says that the R&R found that the drug sniffing dog alerted to the possible presence of narcotics inside the speaker trunk that's what the R&R found that the drug sniffing dog alerted and the defense points out in its brief that trooper Sewell did not testify that the drug dog alerted because she said I'm not a canine handler I can't testify to the fact of the alert of the dog and in fact what she said at the hearing was she was asked question so the trunk was open and the dog was searching the trunk correct and she said I'm not a canine handler so I can't say the trunk is open when the dog is present in essence I can't tell you what the dog is doing because I am a page 70 of the transcript I was aware the dog alerted on the rear of the vehicle or the trunk of the vehicle so she said testified similarly at the earlier hearing when she was asked about what the dog was doing while he was sniffing and she said I can't testify about what the dog was doing I'm not a canine handler I was told the dog alerted on the vehicle so her testimony in the earlier and later hearing are actually nearly identical although the questions are phrased slightly differently and so I'm not running away from the issue I'm merely pointing out that there there is no reliance on the earlier hearing for any reason you brought it up in the first place was you thought it would be more efficient is that the government's because you wouldn't have to repeat the same direct examination is that the idea here the idea was we were trying to narrow the issues so under the meat and confer rules that we have for local rules now in District of Minnesota we were trying to narrow what the issues were and so there were some facts that we didn't disagree about there was a traffic stop there was the videos there were some things we were trying to narrow and so the idea would be I think initially was well can we just admit the transcripts as exhibits to sort of deal with those foundational questions and then we just couldn't reach an agreement and that's ultimately what happened we could not reach an agreement thank you three minutes shorter like to focus for just a minute about the procedures used by the district court because they appeared to cause this court some concern it was very unusual in fact there's pending before the court now a motion to supplement this record to include the transcript from the pointed out judge Loken it's not a part of this record it is extra judicial and in fact it's not really hearsay either because what it is is statements from separate witnesses at a separate hearing now of course under Thompson in this circuit hearsay is sometimes permissible because we have relaxed standards of our constitutional standards at suppression hearings but at least when we're talking about hearsay the witness is available for cross-examination about what the declarant might have said how things might have gone forward mr. Rowe you had the actual declarants in this hearing no except for the one it's just the one agent who was not present trooper Thole testified at both hearings case agent Biederman testified at mr. Rose hearing and case agent Evans testified at the prior Evans is the only one the other two that's right or I don't know if there were how many other witnesses were cited by the magistrate judge those were the two critical I don't think any other ball and full and Biederman and Evans yep complain is about her citing Evans yes and the notion that the government's position that whatever Evans said was said again by Pete by Biederman and so well any difference you know two things on that first of all the fact that the evidence but don't worry I'm not relying on it I mean presumably as a matter of judicial efficiency matters are cited for some reason now even if that reason is just because that is confirmatory and therefore supports the credibility in the subsequent test or in the subsequent hearing that's still important and it's the government's burden to show that this error was harmless if the court agrees with me that it was error to rely on the prior what's your prejudice argument if the if the things I guess the reply brief cites the the dog sniffs reference but that's not that's not relevant to the to the probable cause issues we've been arguing this morning no but it is after that's after the the key events that's right where's where's the where's the prejudicial reference to the prior transcript and in our initial brief we cited all of the areas in which the district court relied upon the prior here probable cause for instance the district court citations testimony was there in the earlier transcript there wasn't in this one it was the same your honor it was generally the same however the fact that it was put forward by different witnesses and that the district yes well I'm not stretching the point I'm mentioning that I'm making the point that at the other hearing it was a different witness as you presented it's much to do about nothing I don't I don't I'm not particularly enamored of the way it was handled like I can understand them why it came up and why it was a little messy but I don't hear anything that's that had it outcome affecting and that and if the court finds that the error is harmless then that's another thing we don't believe that the government met its burden on that I'll moat I'll mention on the minor role adjustment your honor the reason we didn't identify the kilograms of cocaine for each of the defendants is that at the time the briefing was done to the quarterback as Sergeant Edelman called called him had not been convicted that's Houston Oliver clearly mr. Rowe is subordinate reason I raise it is now that I have no more facts if all ten kilograms had been to mr. Rowe as opposed to just the quantity he was he was couriering then the minor row argument becomes stronger I appreciate the time absent further questions from the court I'll sit down thank you and thank you again for serving in a criminal justice act case has been well briefed and argued take it under advisement the court will be